**NATIONAL TREASURY EMPLOYEES UNION, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 84–1292.

United States Court of Appeals, District of Columbia Circuit.

Argued April 1, 1985.

Decided June 20, 1986.

Richard S. Edelman, with whom Lois G. Williams, Washington, D.C., was on brief, for petitioner.

Jill A. Griffin, Atty., F.L.R.A., with whom Ruth E. Peters, Sol., and Steven H. Svartz, Deputy Sol., F.L.R.A., Washington, D.C., were on brief, for respondent.

Before TAMM,* WALD and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

Petitioner National Treasury Employees Union ("NTEU") seeks review of a decision of the Federal Labor Relations Authority ("FLRA") finding nonnegotiable a bargaining proposal seeking to fix the rate of incentive pay to be awarded employees of the Internal Revenue Service ("IRS") under a pilot incentive pay plan. *See National Treasury Employees Union and Internal Revenue Service*, 14 F.L.R.A. 463 (1984). The case arises under the Federal Service Labor-Management Relations Statute, Title VII of the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111, 1191 (codified at 5 U.S.C. §§ 7101–35 (1982)), which generally requires federal agencies to bargain with employee unions about "conditions of employment," 5 U.S.C. § 7102(2), but excludes from that requirement, *inter alia*, matters which affect management's authority to "direct ... employees," 5 U.S.C. § 7106(a)(2)(A), or "assign work," 5 U.S.C. § 7106(a)(2)(B). We

have jurisdiction under 5 U.S.C. § 7123(a), providing for review of final orders of the Authority.

## I

The National Treasury Employees Union is the exclusive representative of employees in IRS Service Centers. In April 1981, IRS proposed to implement on a trial basis, in its Philadelphia Service Center, a new incentive pay program for data entry operators, as authorized by 5 U.S.C. § 4503(1), which provides that an agency may reward an employee who "by his suggestion, invention, superior accomplishment, or other personal effort contributes to the efficiency, economy, or other improvement of Government operations." Under the proposed program an employee whose production rate (keys pushed per hour) exceeds certain quantitative and qualitative requirements would receive compensation in addition to his basic salary. NTEU submitted bargaining proposals concerning this program, a number of which the IRS declared to be outside its statutory duty to bargain. On July 28, 1981, the Union, pursuant to 5 U.S.C. § 7117(c), filed a timely petition with the Authority to resolve the negotiability dispute. *See* 5 U.S.C. § 7105(a)(2)(E) (Authority shall "resolve[ ] issues relating to the duty to bargain in good faith under section 7117(c)").

In a decision issued on May 9, 1984, the FLRA held all but one (and a portion of another) of the disputed proposals nonnegotiable. *See* 14 F.L.R.A. at 463–71. Petitioner seeks review of the Authority's order only with respect to Proposal 5, which provides:

> Incentive money is paid at the rate of $.09 per one-tenth of an efficiency point over 100 percent. For example, performance at 125% efficiency equals $22.50 in incentive pay. The money will be distributed on a pay period basis with the regular salary check. If the employee works overtime he/she will be paid $.04 more per one-tenth of a point otherwise payable. If employees of more than one

---

* Judge Tamm died before the final decision of this case.

grade work the same F/P [function and program] task then the $.09 will be increased by $.02 for each grade above the minimum grade assigned the F/P task.

The IRS had argued before the Authority that since this proposal concerned the pay employees are to receive, it was rendered nonnegotiable by 5 U.S.C. § 7103(a)(14)(C) (defining bargainable "conditions of employment" to exclude matters which are "specifically provided for by Federal statute") and by 5 U.S.C. § 7106(a)(1) (providing that the Federal Service Labor-Management Relations Statute shall not affect an agency's right to determine its budget). The Authority found it unnecessary to address these contentions, holding instead that the proposal was inconsistent with management's rights to direct employees and assign work under 5 U.S.C. § 7106(a)(2), which reads in relevant part:

(a) ... [N]othing in this chapter shall affect the authority of any management official of any agency—

. . . .

(2) in accordance with applicable laws—

(A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;

(B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted....

The Authority ruled that the provision of incentives to encourage and reward superior performance is within these reserved rights:

[A]n integral aspect of management's exercise of its rights to assign work and direct employees is to establish a system of rewards and sanctions for employee performance, including the provision of incentives to encourage and reward supe-

rior performance. The nature of the incentive (*e.g.*, monetary or nonmonetary), the amount of a monetary incentive, and the circumstances under which an incentive may be awarded are essential components of management's judgment. That is, they directly relate to the potential success of the incentive in motivating the performance of particular job tasks and, hence, to some extent determine the priorities for accomplishing the agency's work.

14 F.L.R.A. at 470. Member Haughton dissented, *id.* at 472–74. The NTEU, echoing that dissent, characterizes the Authority's holding as creating a nonnegotiable "right to motivate" which is not found in the statutory scheme.

## II

The NTEU seeks to avoid the force of the Authority's reasoning by arguing that, even if the rights to assign work and direct employees include the right to reward superior performance of the tasks assigned and directed, the underlying activity for which the incentive pay was to be awarded in the present case was not "assigned" or "directed,"[1] so that any concomitant management right to reward would not attach. The Union points out that none of the data entry operators is *required* to achieve that level of performance at which the incentive pay commences; to the contrary, the pay is given precisely for going *beyond* 100 per cent of required performance.

The Authority has the better of this dispute. The Union acknowledges that, although no employee can be compelled to push more data keys per month than the number immediately below the incentive-pay level, if an employee should happen to reach that number within three weeks he would not be entitled to take the rest of the month off. He would be required to continue working—and his *assigned work*

---

**1.** To avoid constant repetition of the dual statutory terms "assign work" and "direct employees," and of such words derived from those terms as "assignment" and "direction," hereinafter our analysis will generally address only the former statutory term, with the understanding that it applies as well to the latter.

would continue to be the entry of data. We think it is a reasonable interpretation of the statute to regard the incentive pay earned during the last week as pay *for* assigned work, *i.e.*, to regard it as only necessary that the identity of the work, and not also its quantity, be specified in order for the work to qualify as "assigned." Thus, we agree with the Authority that—leaving aside for the moment the question whether the present decision is in itself correct—there is at least no inconsistency between the present decision and the opinion that the Authority issued two days later in *National Treasury Employees Union and Federal Deposit Insurance Corporation,* 14 F.L.R.A. 598 (1984) ("*NTEU & FDIC*") which held to be negotiable a union proposal determining the rate of incentive awards for valuable employee suggestions.[2] 14 F.L.R.A. at 601. The Authority's opinion in the latter case reasonably distinguished it from the present one on the ground that, unlike the incentive pay rates at issue here, "the incentive awards with which this proposal is concerned are not incentives for *superior performance of job requirements,*" *id.* at 604 n. 13 (emphasis added). Contributing to the employee suggestion box, in other words, is not a category of work that is "assigned."

Since we have concluded that the work for which the incentive pay was to be awarded in the present case can properly be considered "assigned" work, we must confront head-on the Authority's contention that the management right to assign includes the management right to reward superior performance of what has been assigned. That is assuredly not a self-evident proposition and—even giving the Authority full measure of the deference it is due, *see Bureau of Alcohol, Tobacco & Firearms v. FLRA,* 464 U.S. 89, 97 (1983) —it seems to us simply wrong. The right

to reward for superior performance of assigned work is surely a good deal less implicit in the right to assign work than is the right to *sanction* for *inferior* performance. Yet the statute sets forth the latter right explicitly, including, as a separate, nonnegotiable management power, the right to "suspend, remove, reduce in grade or pay, or take other disciplinary action." 5 U.S.C. § 7106(a)(2)(A). This demonstrates, we think, that the terms "assign work" and "direct employees" were not meant to be so expansive as to include whatever is useful for getting the agency's work done in a particular manner of priority, but were rather descriptions of a precise, defined management activity.

The Authority's reasoning—that level of incentive pay "directly relate[s] to the potential success of the incentive in motivating the performance of particular job tasks," and thus "to some extent determine[s] the priorities for accomplishing the agency's work," which is the very objective of the reserved management right to assign work—is an example of a familiar defect of statutory construction that might be called substituting the end for the means. It may well be that the rights to assign work and to reward superior performance of assigned work are both means to the objective of enabling the agency to determine its work priorities, just as the carrot and the stick are both means of getting a donkey to move. But the similarity of purpose does not establish that when Congress says carrot it means stick as well. It is for Congress, and not for the Authority or the courts, to determine what means it is willing to employ to achieve particular ends, and it usurps that prerogative to say that if Congress has rendered work assignment nonbargainable, then also nonbargainable is any activity that has the same effect as work assignment. If the

---

**2.** Those awards were authorized by the same statutory provision that authorizes the incentive pay here, 5 U.S.C. § 4503 (1982), which permits the rewarding of not only "superior accomplishment" but also "suggestion, invention, ... or other personal effort." The regulations issued to implement this provision, *see* 5 U.S.C. § 4506,

divide awards into the two categories of "Performance Awards," 5 C.F.R. Part 531, Subpart F (based on performance within the scope of job responsibilities) and "Special Awards," 5 C.F.R. Part 451, Subpart B (based on employee suggestions, inventions, and actions). *NTEU & FDIC* involved the latter.

latter principle were applied consistently, it is difficult to imagine *any* agency prescriptions regarding terms and conditions of work for particular classes of employees that would remain bargainable, since (unless the agency is squandering its resources) they all have the same ultimate objective as assignment and direction, *viz.*, increased production by those employees.

■ Contrary to Authority counsel's argument, affirmation of the decision in this case is not compelled by our opinions in *National Treasury Employees Union v. FLRA*, 691 F.2d 553 (D.C.Cir.1982) ("*NTEU v. FLRA*"), and *American Federation of Government Employees v. FLRA, Local 1968*, 691 F.2d 565 (D.C.Cir.1982) ("*AFGE v. FLRA*"), which upheld Authority determinations that performance standards (and certain matters related to performance standards) were nonbargainable because they came within the management rights to assign work and direct employees. The performance standards sought to be negotiated in both of those interrelated cases included standards which established minimum levels of effort to avoid "remedial action." *See NTEU v. FLRA*, 691 F.2d at 556 (quoting 5 C.F.R. § 430.202(e) (1982)); *AFGE v. FLRA*, 691 F.2d at 567 n. 10 (same).[3] The essence of our holding was expressed in the first case, which involved exclusively such a "minimum level" standard, and in our view rested upon that characteristic:

> [P]erformance standards for critical job elements were deemed by the Authority to be directly determinative of the level of work output and caliber of work product to be achieved. In the Authority's view, these standards are more than mere ex post facto measures of employee

performance; they mark out beforehand the amount, quality and timeliness of the work employees are to perform.... Formulation of performance standards for critical job elements was therefore held to fall within the scope of management's reserved right to "direct employees" and "assign work."

> We can find no error in this reasoning....

*NTEU v. FLRA*, 691 F.2d at 562 (footnotes omitted). This holding was adopted by reference in the second case, *see AFGE v. FLRA*, 691 F.2d at 570, 573, where the standards sought to be negotiated included (though they did not consist exclusively of) "minimum level" standards. We view those opinions as establishing that while the assignment of work includes, as we have said earlier, designation of the category of duties an employee is to perform, it also includes (if the agency chooses to be so specific) designation of the precise quantity and quality of those duties—which is unquestionably achieved by performance standards that must be met to avoid disciplinary action.[4] That is a far cry from saying, as the Authority contends here, that it includes establishment of the rates of incentive pay. The latter can be brought within the concept only by the sort of analysis ("the means includes the end, which includes all other means to the same end") that we have rejected above.

\* \* \* \* \* \*

■ We hold that the level of incentive pay awarded for the performance of agency work, even work that has been "assigned" or "directed," does not come within the nonbargainable management rights to assign work and direct employees. The Authority's decision with respect to Propos-

**3.** The same was true of the performance standards at issue in *National Treasury Employees Union v. FLRA*, 767 F.2d 1315 (9th Cir.1985), where the court, in affirming the Authority's finding of nonbargainability, relied upon our decision in *NTEU v. FLRA*. *See* 767 F.2d at 1317.

**4.** We express no opinion on whether the rights to assign work and direct employees include establishment of performance standards that do

not have to be met to avoid disciplinary action, nor on whether such standards fall within a separate management right, such as the right "to make selections for appointments," 5 U.S.C. § 7106(a)(2)(C). *Cf. NTEU v. FLRA*, 691 F.2d at 563–64 n. 95 (establishment of performance standards that must be met to avoid discipline arguably within management right to "lay off[ ] and retain employees," 5 U.S.C. § 7106(a)(1) (Supp. IV 1980)).

al 5 is therefore vacated. Since the Authority did not pass upon the reasons for nonnegotiability submitted by the Agency, *see* 14 F.L.R.A. at 470 n. 16, we remand for further proceedings in accordance with this opinion.

*So ordered.*