# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 23, 2019      Decided December 3, 2019

No. 18-1239

NATIONAL TREASURY EMPLOYEES UNION,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
CUSTOMS AND BORDER PROTECTION,
INTERVENOR

———

On Petition for Review of a Decision and
Order of the Federal Labor Relations Authority

———

*Allison C. Giles* argued the cause for petitioner. With her on the briefs were *Gregory O'Duden* and *Julie M. Wilson*.

*Noah B. Peters*, Solicitor, Federal Labor Relations Authority, argued the cause for respondent. On the brief were *Rebecca J. Osborne*, Acting Deputy Solicitor, and *Tabitha G. Macko*, Attorney.

*Melissa N. Patterson*, Attorney, U.S. Department of Justice, argued the cause for intervenor. On the brief were *H. Thomas Byron III* and *Tyce R. Walters*, Attorneys.

2

Before: MILLETT and RAO, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: The Federal Service Labor-Management Relations Statute (the "Statute") generally governs collective bargaining between certain federal agencies and labor organizations representing agency employees. *See* 5 U.S.C. §§ 7101-7135 (2018). In enacting the Statute, Congress found that it was in the public interest to protect the right of employees in the federal government "to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them[.]" *Id*. § 7101(a)(1). The Statute provides that, *inter alia*, covered employees have a right "to engage in collective bargaining with respect to conditions of employment through representatives chosen by employees[.]" *Id*. § 7102(2). Agency officials are thus required to "meet and negotiate in good faith" with their employees' exclusive representative "for the purposes of arriving at a collective bargaining agreement." *Id.* § 7114(a)(4). The required scope of bargaining under the Statute is limited, however.

Agencies and employees' bargaining representatives have a "duty to bargain in good faith" with respect to conditions of employment that are subject to collective bargaining under the Statute. *Id.* § 7117(a)(1). Agency officials have no duty to bargain, however, over certain management rights reserved to agencies by the Statute. *See id.* § 7106(a). The dispute in this case involves two such management rights – the right to "direct employees" and the right to "assign work." *Id.* § 7106(a)(2)(A)-(B).

Petitioner National Treasury Employees Union ("Union") is the bargaining representative for persons employed by the U.S. Department of Homeland Security, Customs and Border Protection ("Agency"). In negotiations over a new collective bargaining agreement, the Union proposed that, in appraising employee work performance, the Agency not use any "performance appraisal rating levels above the Successful rating level for purposes of the annual appraisal process." Agency representatives declined to negotiate over the matter. The Union then filed a negotiability petition with the Federal Labor Relations Authority ("Authority" or "FLRA"), challenging the Agency's refusal to bargain. The Authority denied the Union's petition because, in its view, the number of rating levels for both individual elements of the job and overall performance are essential aspects of an agency's rights to direct employees and assign work. *Nat'l Treasury Emps. Union*, 70 F.L.R.A. 701 (2018).

The Union now petitions this court to reverse the Authority's decision and find that the disputed proposal falls within the Agency's duty to bargain. Because we find that the FLRA's decision is based on a permissible and reasonable interpretation of the Statute and is consistent with well-established precedent, we deny the petition for review.

## I. BACKGROUND

### A. Legal Framework

As noted above, the Statute governs collective bargaining between certain federal agencies and their employees' exclusive bargaining representatives. *See* 5 U.S.C. §§ 7101-7135. Among other things, the Statute requires agencies to bargain in good faith over various conditions of employment. *See id.* § 7114(a)(4), (b) (imposing and defining the duty to

"meet and negotiate in good faith"); *id.* § 7117 (defining further the "duty to bargain in good faith"); *id*. § 7116(a)(5) (making an agency's failure to do so an "unfair labor practice"). But the duty to bargain does not extend to all conditions of employment.

As explained at the outset of this opinion, the Statute exempts certain "management rights" from the duty to bargain. *See id.* § 7106(a). Section 7106(a)(2) states, in relevant part, that "nothing in this chapter shall affect the authority of any management official of any agency . . . in accordance with applicable laws—"

> (A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;
> (B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted . . . .

*Id.* § 7106(a)(2)(A)-(B). In short, an agency has no obligation to bargain over contract proposals that would interfere with the two management rights at issue in this case – the rights to "direct . . . employees" and "assign work."

Under the Statute, the Federal Labor Relations Authority, *id.* § 7104, is authorized to determine, *inter alia*, the negotiability of contested collective bargaining proposals, *id.* § 7105(a)(2)(E). If an agency alleges that a proposal is nonnegotiable – or if an agency fails to respond to a request to negotiate within ten days, 5 C.F.R. § 2424.21(b) (2019) – the employees' exclusive representative may appeal to the Authority for an expedited negotiability determination. *See* 5

U.S.C. § 7117(c)(1), (6). A party aggrieved by a negotiability decision issued by the FLRA may institute an action for judicial review in the court of appeals in the circuit in which the party resides or transacts business or in the United States Court of Appeals for the District of Columbia. *Id.* § 7123(a).

## B. Procedural History

The dispute in this case arose during the course of collective bargaining between the Union and the Agency. On April 10, 2016, the Union contacted the Agency with proposed changes to the section of the parties' contract related to the Agency's performance appraisal system. Joint Appendix ("J.A.") 7. Specifically, the Union put forward the following two proposals:

Proposal 1
There will be no performance appraisal rating levels above the Successful rating level for purposes of the annual appraisal process. Nothing in this proposal prevents the employer from establishing performance levels between the Successful and Unacceptable rating levels. In the event that the Agency decides to establish such a performance level(s) it will notify and provide [the Union] the opportunity to bargain at the national level in accordance with law and the procedures contained in Article 26: Bargaining.

Proposal 2
The performance rating levels set forth above do not bar or otherwise inhibit [the Agency's] right to define and set the number of critical elements, core competencies or the number of performance goals that will be included in each performance plan. Similarly, the performance rating levels set forth above do not

bar or otherwise inhibit [the Agency's] right to determine the performance standards that must be met for each performance goal and core competency in order for an employee to be appraised at the two performance rating levels set forth above. Finally, the limitation on the number of performance levels may not be interpreted to bar [the Agency] from assigning work or directing its employees.

*Id*. The Union explained that these proposals were "designed to maintain the parties' 20[-]year practice of evaluating employee performance using a Pass-Fail appraisal approach." *Id.* The Union asked the Agency to negotiate over the substance of the proposals or to provide a "written allegation of non-negotiability[.]" *Id.* On May 3, 2016, the Union, having received no response from the Agency, petitioned the FLRA for a negotiability determination. *Id.* at 1-6.

Before the Authority, the Agency challenged both the timeliness of the Union's petition and the merits of its position. On the merits, the Agency argued that the Union's proposals were nonnegotiable because they would interfere with the Agency's rights to direct employees and assign work, citing the Authority's precedents stating that these rights include the right to determine the number of rating levels in a performance appraisal system. In response, the Union argued that its petition was timely. The Union also argued that the Authority should reconsider or distinguish its precedents, at least with respect to rating levels above "successful." In advancing its position, the Union relied in part on the reasoning in *National Treasury Employees Union v. FLRA* (*NTEU 1986*), 793 F.2d 371 (D.C. Cir. 1986). The court in that case held that the agency had an obligation to bargain over a proposal seeking to fix the rate of incentive pay to be awarded to employees for superior performance. The Union argued that the decision in *NTEU*

*1986* implies that agencies must also negotiate over the number of employee appraisal rating categories for superior performance. Finally, the Union argued that the Authority should find, in the alternative, that its proposals were negotiable as an appropriate arrangement for addressing the adverse effects of the Agency's management rights.

The Authority dismissed the Union's negotiability petition. *See Nat'l Treasury Emps. Union*, 70 F.L.R.A. 701 (2018). The Authority found the petition timely, but held that Proposal 1 was outside the Agency's duty to bargain because it would interfere with the Agency's rights to direct employees and assign work. The Authority first interpreted Proposal 1 as an effort to restrict the Agency's ability to determine the number of overall employee ratings that the Agency could use in its performance appraisal system. It then applied its longstanding view that "[t]he number of [rating] levels for both individual job elements and overall performance are essential aspects of the rights to assign work and direct employees." *Id.* at 703 (alterations in original) (quoting *Am. Fed'n of State, Cty. & Mun. Emps., Council 26* (*AFSCME, Council 26*), 13 F.L.R.A. 578, 580 (1984)). The Authority reasoned that management's control over the number of rating levels affects its ability to "establish and communicate job requirements" and "the range of judgments which [it] can make regarding performance[.]" *Id*. (quoting *AFSCME, Council 26*, 13 F.L.R.A. at 580). The Authority declined to reconsider its precedents and rejected the Union's argument that our decision in *NTEU 1986* demands otherwise. Finally, the Authority found that Proposal 1 was not an appropriate arrangement, denied the Union's request to sever part of Proposal 1, and dismissed its petition as to Proposal 2 because it was "inextricably intertwined" with Proposal 1.

The Union filed a timely petition for review with this court. The Union now challenges only the Authority's holding that Proposal 1 is outside the Agency's duty to bargain. The Authority's decision in this case rests solely on its interpretation of the rights to direct employees and assign work under 5 U.S.C. § 7106(a)(2)(A)-(B). Therefore, we will focus only on these statutory provisions in reviewing the FLRA's decision on negotiability.

## II. ANALYSIS

### A. Standard of Review

"It is well established that the court's role in reviewing the FLRA's negotiability determinations is narrow." *Am. Fed'n of Gov't Emps., Local 2761 v. FLRA*, 866 F.2d 1443, 1446 (D.C. Cir. 1989). We will set aside the Authority's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2018) (incorporated by reference into 5 U.S.C. § 7123(c)). When the Authority interprets the statute it administers, as it did here, the *Chevron* framework applies. *Nat'l Treasury Emps. Union v. FLRA*, 754 F.3d 1031, 1041 (D.C. Cir. 2014) (citing *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)). "We therefore . . . defer to the Authority's *reasonable* interpretations of the Statute and its resulting negotiability determinations." *Ass'n of Civilian Technicians v. FLRA,* 353 F.3d 46, 50 (D.C. Cir. 2004).

### B. The Authority's Negotiability Determination

The Authority's decision in this case is based on its determination that an agency's rights to "direct employees" and "assign work" include the right to determine "[t]he number of [rating] levels for both individual job elements and overall

performance[.]" *Nat'l Treasury Emps. Union*, 70 F.L.R.A. 701, 703 (2018) (first and second alterations in original) (quoting *AFSCME, Council 26*, 13 F.L.R.A. 578, 580 (1984)). In explaining its decision, the FLRA said:

> Determining a performance evaluation system's rating levels "directly affects the degree of precision with which management can establish and communicate job requirements (performance standards), the range of judgments which management can make regarding performance in the context of performance appraisals, and the range of rewards and sanctions which management can apply to such performance."

*Id*. (quoting *AFSCME, Council 26*, 13 F.L.R.A. at 580-81). It is clear that the Authority's position in this case emanates from its decisions concerning the negotiability of proposals that interfere with an agency's ability to set performance standards or determine whether (and to what degree) those standards are being met. *See, e.g.*, *Nat'l Ass'n of Gov't Emps. Local R1-144*, 38 F.L.R.A. 456, 473 (1990) (emphasizing the connection between the rights to direct and assign and the ability to establish job requirements for "various levels of performance"); *Am. Fed'n of Gov't Employees, Council of GSA Locals Council 236*, 55 F.L.R.A. 449, 452 (1999) (connecting the "number and designation of rating levels" to "how an agency evaluates the manner in which its employees perform the work to which they have been assigned").

The Authority has defined the right to "direct employees" as the right to "supervise and guide them in the performance of their duties[.]" *Nat'l Treasury Emps. Union* (*Bureau of Public Debt*), 3 F.L.R.A. 768, 775 (1980), *aff'd sub nom. Nat'l Treasury Emps. Union v. FLRA* (*NTEU 1982*), 691 F.2d 553

(D.C. Cir. 1982). The right to "assign work," on the other hand, includes the right to decide what responsibilities to assign, to whom to assign them, and on what schedule. *See id*. In applying 5 U.S.C. § 7106(a)(2)(A)-(B), at least in the negotiability decisions that bear most directly on this case, the Authority often fails to distinguish between the right to direct employees and the right to assign work. This may be because the FLRA sees little daylight between them. Or it may be because directing employees often involves the assignment of work, making it difficult to differentiate the rights in practice. *See Int'l Plate Printers Union of N. Am., Local 2*, 25 F.L.R.A. 113, 119 (1987) (noting that "[t]he right to direct employees is . . . reflected in the supervisory function of assigning work to employees"). This court has also treated the rights to direct employees and assign work as generally "co-extensive." *See Overseas Educ. Ass'n v. FLRA*, 827 F.2d 814, 819 (D.C. Cir. 1987) ("In general, the right to assign work and the right to direct employees, if not actually interchangeable, will be co-extensive."); *NTEU 1986*, 793 F.2d 371, 373 n.1 (D.C. Cir. 1986).

Although the rights to direct employees and assign work may overlap in many instances, the rights are not coterminous. In the Authority's view, however, these statutory terms, taken together, generally give agencies the nonnegotiable right to supervise their employees and determine the quality, quantity, and timeliness of their work. *See Bureau of Public Debt*, 3 F.L.R.A. 768, 775-76 (1980), *aff'd sub nom. NTEU 1982*, 691 F.2d 553 (D.C. Cir. 1982) (discussing both together); *Nat'l Treasury Emps. Union*, 39 F.L.R.A. 27, 56 (1991) (same). We have summarized the point by saying that the rights to direct employees and assign work amount to the "nonnegotiable right to determine what work will be done, and by whom and when." 691 F.2d at 562.

Over the years, FLRA precedent has established that the rights to direct employees and assign work include at least two critical features that are relevant in this case. First, the Authority has held that the Statute affords agencies a nonnegotiable right to establish performance standards. *Bureau of Public Debt*, 3 F.L.R.A. 768 (1980), *aff'd sub nom. NTEU 1982*, 691 F.2d 553 (D.C. Cir. 1982). On this point, the FLRA has consistently found that performance standards allow agencies to effectively exercise their rights to supervise employees and determine what they must do. *See NTEU 1982*, 691 F.2d at 562-63; *see also id.* at 555-56 (explaining why agencies must formulate "performance standards"). In the Authority's view, these standards play an important forward-looking role that make them central to assigning and directing. That is, they enable management to effectively communicate to employees what a job requires and how it should be done – to "mark out beforehand the amount, quality and timeliness of the work employees are to perform." *Id.* at 562.

The Authority has adopted this view about all performance standards, not just "minimum" performance standards. *See Nat'l Treasury Emps. Union*, 13 F.L.R.A. 325, 327-28 (1983) (holding that "[a]n agency is not limited to merely prescribing the minimum level of performance which will be required from an employee for job retention"). We declined to address this issue in *NTEU 1986*, 793 F.2d 371, 375 n.4 (D.C. Cir. 1986). Two years later, however, we stated without qualification that "the content of performance standards is nonnegotiable." *Overseas Educ. Ass'n v. FLRA*, 872 F.2d 1032, 1034 (D.C. Cir. 1988) (per curiam) (explaining that "[b]argaining over the content of performance standards would interfere with management's formulation of the quality, quantity, and timeliness criteria necessary to assign work and direct employees"); *see also Patent Office Prof'l Ass'n v. FLRA*, 47

F.3d 1217, 1220 (D.C. Cir. 1995) (citing *NTEU 1982* for the rule that agencies have "the right to set substantive standards").

Second, the FLRA has held that an agency's rights to direct employees and assign work include the right to determine whether (and to what degree) its employees are meeting those standards. Without the right to "review and evaluate employee performance of assigned duties," the Authority has said, the rights to direct employees and assign work would be "virtually meaningless." *Nat'l Treasury Emps. Union*, 6 F.L.R.A. 522, 531 (1981). As a result, the Authority has held that "[t]he evaluation of employee performance is an exercise of management's rights to direct employees . . . and to assign work[.]" *Am. Fed'n of Gov't Emps., Local 1760*, 28 F.L.R.A. 160, 169 (1987). In the Authority's view, this "right to evaluate employee performance extends to the determination of the rating to be given[.]" *Id.*

The FLRA's conclusions about the connection between the rights to direct and assign and the right to evaluate are eminently reasonable. For one thing, restrictions on an agency's ability to evaluate its employees are likely to restrict the performance standards that management can set. *See Nat'l Treasury Emps. Union*, 47 F.L.R.A. 705, 710 (1993) (restricting an employer's ability to enforce standards through employee evaluations can "effectively alter the content of th[ose] standards"); *Overseas Educ. Ass'n v. FLRA*, 872 F.2d 1032, 1034 (D.C. Cir. 1988) (per curiam) (restricting the use of certain evaluative criteria "would prevent the agency from establishing any performance standard which relied on such [criteria]"). For another, restrictions on an agency's ability to evaluate its employees can interfere with its deliberative process – interfere, that is, with an agency's ability to collect information, deliberate over its import, and put it to use via updated directions and assignments. *NLRB Union*, 42 F.L.R.A.

1305, 1318-19 (1991) (noting that "proposals that limit management's deliberations concerning employee evaluations directly interfere with management's right to direct employees and assign work"), *petition for review granted sub nom. NLRB v. FLRA*, 2 F.3d 1190 (D.C. Cir. 1993) (denying enforcement of the Authority's order on separate grounds).

With these precedents in mind, we turn back to the Authority's conclusion that "[t]he number of performance levels for both individual job elements and overall performance are essential aspects of the rights to assign work and direct employees." *AFSCME, Council 26*, 13 F.L.R.A. 578, 580 (1984). To support this view, the Authority has stressed the connections between an agency's ability to decide how many rating levels to use and "the degree of precision with which [it] can establish and communicate job requirements (performance standards)" and "the range of judgments which [it] can make regarding performance[.]" *Id.* at 580-81. In other words, the Authority has sensibly connected an agency's ability to control the number of rating levels it uses to the effective exercise of its rights to set performance standards and evaluate employee performance – two indisputable incidents of the rights to direct employees and assign work. *See, e.g.*, *Am. Fed'n of Gov't Employees, Council of GSA Locals Council 236*, 55 F.L.R.A. 449, 452 (1999) (connecting the "number and designation of rating levels" to "how an agency evaluates the manner in which its employees perform the work to which they have been assigned," and connecting both evaluations and work assignments to the rights to direct employees and assign work).

What the Authority's decisions recognize is that the rights to direct employees and assign work include dynamic aspects. In general, forward-looking decisions about work assignments and directions are based on backward-looking assessments. At the same time, management's appraisal system – if understood

by employees – can help to clarify or reinforce its directions and assignments. To effectively exercise the rights to direct employees and assign work, then, Congress afforded agencies latitude under the Statute to evaluate their employees as they see fit consistent with the agencies' lawful objectives. The Authority has determined that this latitude involves the ability to decide how many rating levels to include in a performance appraisal system. We hold that this determination is based on permissible and reasonable interpretations of § 7106(a)(2)(A)-(B).

The Union, which does not dispute that FLRA decisions are stacked against it, contends that the Authority's interpretation of the Statute is inconsistent with this court's decision in *NTEU 1986*, 793 F.2d 371, at least insofar as the FLRA means to say that proposals concerning "superior" ratings are nonnegotiable. In *NTEU 1986*, we reversed an FLRA decision holding that the rights to direct employees and assign work include the right to determine the rate of incentive pay for superior work. The court reasoned as follows:

> The Authority's reasoning—that level of incentive pay "directly relate[s] to the potential success of the incentive in motivating the performance of particular job tasks," and thus "to some extent determine[s] the priorities for accomplishing the agency's work," which is the very objective of the reserved management right to assign work—is an example of a familiar defect of statutory construction that might be called substituting the end for the means. It may well be that the rights to assign work and to reward superior performance of assigned work are both means to the objective of enabling the agency to determine its work priorities, just as the carrot and the stick are both means of getting a donkey to move. But

the similarity of purpose does not establish that when Congress says carrot it means stick as well. It is for Congress, and not for the Authority or the courts, to determine what means it is willing to employ to achieve particular ends, and it usurps that prerogative to say that if Congress has rendered work assignment nonbargainable, then also nonbargainable is any activity that has the same effect as work assignment. If the latter principle were applied consistently, it is difficult to imagine *any* agency prescriptions regarding terms and conditions of work for particular classes of employees that would remain bargainable . . . .

793 F.2d at 374-75 (alterations in original) (quoting *Nat'l Treasury Emps. Union*, 14 F.L.R.A. 463, 470 (1984), *vacated sub nom. NTEU 1986*, 793 F.2d 371). The Union submits that the Authority's reasoning in this case suffers from this same defect. In the Union's view, "giving an employee a rating above successful," like awarding an employee incentive pay, is "simply another way of rewarding . . . superior work." Br. for Petitioner at 17. And there is no nonnegotiable management right to reward superior work, the Union argues, even if such rewards help the Agency get its work done.

We disagree. It is true, of course, that both incentive pay and superior ratings may indicate that an employee's work is above par. But the Union is mistaken in suggesting that a superior rating is simply another "reward" for superior performance. Rather, a superior rating is an evaluative judgment that enables management to more effectively exercise its nonnegotiable rights to (re)direct employees and (re)assign work. The fact that this evaluative judgment might also make an employee eligible for a negotiable reward is of no consequence. In addition, performance ratings and incentive

pay are not necessarily two sides of the same coin. There may be situations in which an employee earns high incentive pay but receives less-than-favorable performance assessments due to work deficiencies having nothing to do with the incentive pay calculus.

The Union's claim that the Authority's position in this case rests on the rationale that we rejected in *NTEU 1986* misses the mark. The Authority's decision in this case rests on a permissible and reasonable interpretation of 5 U.S.C. § 7106(a)(2)(A)-(B), which, as explained above, reasonably accepts the view that an agency's ability to decide how many rating levels to use is clearly tied to its rights to direct employees and assign work. Without the right to "review and evaluate employee performance of assigned duties," the rights to direct employees and assign work would be "virtually meaningless." *Nat'l Treasury Emps. Union*, 6 F.L.R.A. 522, 531 (1981).

In sum, we have no grounds to reject the Authority's position that the number of rating levels in an employee appraisal system is inextricably tied to both the right to assign work and the right to direct employees. Both rights depend, for their effective exercise, on an agency's ability to measure and evaluate its employees against pre-established performance standards. Without this ability, an agency will be limited in making effective decisions about how (and to whom) to assign work or how to supervise and guide its employees. Because proposals restricting the number of performance ratings interfere with an agency's ability to measure and evaluate its employees, then, they interfere with an agency's nonnegotiable rights to assign work and direct employees. The Authority's position rests on a permissible and reasonable construction of the Statute and it is consistent with well-established precedent. Therefore, we find no merit in the petition for review.

### III. CONCLUSION

For the reasons set forth above, we deny the petition for review.