# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 16, 2017      Decided December 15, 2017

No. 16-1277

NTCH, INC.,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

CELLCO PARTNERSHIP, D/B/A VERIZON WIRELESS,
INTERVENOR

———

On Petition for Review of an Order of
the Federal Communications Commission

———

*Donald J. Evans* argued the cause for petitioner. With him on the briefs was *Ashley Ludlow*. *Jonathan Markman* entered an appearance.

*Maureen K. Flood*, Counsel, Federal Communications Commission, argued the cause for respondents. On the brief were *Robert B. Nicholson* and *Jonathan H. Lasken*, Attorneys, U.S. Department of Justice, *David M. Gossett*, Deputy General Counsel, *Richard K. Welch*, Deputy Associate General Counsel, and *Matthew J. Dunne*, Counsel. *Jacob M. Lewis*, Associate General Counsel, entered an appearance.

*David L. Haga* argued the cause for intervenor. With him on the brief was *Christopher M. Miller*. *Andre J. Lachance* entered an appearance.

Before: ROGERS and TATEL, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: NTCH, Inc. ("NTCH"), a regional Commercial Mobile Radio Service carrier in a number of markets around the United States, petitions this court for review of an order issued by the Enforcement Bureau ("Bureau") of the Federal Communications Commission ("Commission"). The Bureau acted pursuant to delegated authority under 47 U.S.C. § 155(c)(1), but NTCH never sought Commission review of the Bureau order before petitioning for judicial review. The Communications Act of 1934 ("Act") requires complaining parties who seek to challenge any such action taken by the Bureau to first seek review with the Commission as "a condition precedent to judicial review." 47 U.S.C. § 155(c)(7) (2012). Therefore, this court has no jurisdiction to entertain NTCH's challenge to the order issued by the Bureau. *Int'l Telecard Ass'n v. FCC*, 166 F.3d 387, 388 (D.C. Cir. 1999) (per curiam).

NTCH argues that because the Bureau's order concluded an investigation into the lawfulness of a charge, classification, regulation, or practice under 47 U.S.C. § 208, it was a "final order" under § 208(b) and, thus, subject to judicial review. NTCH is mistaken. Even if NTCH's claim falls within the compass of § 208(b), this court still does not have jurisdiction to address it. As we explain below, the order issued by the

Bureau is not an order of the Commission. And without a final order from the Commission, we have no jurisdiction to address NTCH's petition for review.

Because NTCH failed to seek Commission review before petitioning for review in this court, we are constrained to dismiss the petition for lack of jurisdiction.

## I. BACKGROUND

This case concerns NTCH's attempt to challenge Commission rules governing disputes over voice and data "roaming" rates. "[W]hen wireless subscribers travel outside the range of their own carrier's network and use another carrier's network infrastructure to make a call," the rate the latter carrier charges the "roaming" carrier's customer is the "roaming" rate. *Cellco P'ship v. FCC*, 700 F.3d 534, 537 (D.C. Cir. 2012). Voice roaming allows customers to make telephone calls when they go outside of their mobile operator's cellular network; data roaming, in turn, allows customers to access data services, such as the internet. Smaller carriers such as NTCH, with only limited networks, have obvious concerns about the roaming charges they may absorb on behalf of their wireless subscribers.

The Commission issued orders governing voice roaming in 2007, *see In the Matter of Reexamination of Roaming Obligations of Commercial Mobile Radio Service Providers*, 22 FCC Rcd. 15817 (2007), and 2010, *see In the Matter of Reexamination of Roaming Obligations of Commercial Mobile Radio Service Providers and Other Providers of Mobile Data Services*, 25 FCC Rcd. 4181 (2010) (collectively, "*Voice Roaming Orders*"). In 2011, the Commission issued an order governing data roaming. *See In the Matter of Reexamination of Roaming Obligations of Commercial Mobile Radio Service*

*Providers and Other Providers of Mobile Data Services* ("*Data Roaming Order*"), 26 FCC Rcd. 5411 (2011). In 2015, the Commission issued an order classifying retail broadband internet access service as a "telecommunications service" subject to common carriage regulation under Title II of the Act. *See In the Matter of Protecting and Promoting the Open Internet* ("*Open Internet Order*"), 30 FCC Rcd. 5601, 5743 ¶ 331 (2015), *aff'd*, *U.S. Telecom Ass'n v. FCC*, 825 F.3d 674 (D.C. Cir. 2016).

In its *Voice Roaming Orders*, the Commission found that § 208 applied to the provisioning of voice roaming as a common carrier service. *In the Matter of NTCH, Inc., Complainant v. Cellco P'ship d/b/a Verizon Wireless, Defendant*, 31 FCC Rcd. 7165, 7167–68 ¶ 7 (2016). The Commission's rules provide that the Bureau resolves complaints filed under § 208. *Compare* 47 C.F.R. § 0.311 (2016) (stating that "[t]he Chief, Enforcement Bureau, is delegated authority to perform all functions of the Bureau, described in § 0.111," except for certain matters not germane here and "[o]rders concluding an investigation under section 208(b) of the Communications Act and orders addressing petitions for reconsideration of such orders," which "shall be referred to the Commission en banc for disposition"), *with id.* § 0.111(a)(1) (stating that the Bureau shall "[r]esolve complaints, including complaints filed under section 208 of the Communications Act, regarding acts or omissions of common carriers (wireline, wireless and international)"); *see also* 47 U.S.C. § 155(c)(1) (2012) (stating that the Commission "may . . . delegate any of its functions," with the exception of actions referred to in § 208(b) and other sections not germane here). The Commission's *Data Roaming Order* set forth procedures for resolving disputes over its data roaming rule, providing that parties could file complaints under 47 C.F.R. § 20.12(e)(2) and delegating authority to the Bureau to adjudicate data roaming complaints. 47 C.F.R. §

0.111(a)(11) (2016); *Data Roaming Order*, 26 FCC Rcd. at 5451 ¶ 82 ("We further clarify that the Enforcement Bureau has delegated authority to resolve complaints arising out of the data roaming rule.") & n.238 ("We add appropriate clarifying language to this effect to the rule governing the functions of the Enforcement Bureau." (citing modifications to 47 C.F.R. § 0.111(a)(11) (2016))). NTCH concedes that the Bureau acted pursuant to delegated authority, but contends that the Commission's delegation of authority to the Bureau violated 47 U.S.C. § 155(c)(1).

On November 22, 2013, after the Commission's *Data* and *Voice Roaming Orders* were released (but before the Commission's *Open Internet Order* reclassified mobile broadband as a Title II service subject to common carriage regulation), NTCH filed a complaint against Verizon Wireless ("Verizon"). The complaint alleged that Verizon had violated the Commission's *Voice Roaming Orders* and *Data Roaming Order* by offering roaming rates that were unjust and unreasonable, unreasonably discriminatory, and commercially unreasonable. The complaint noted that voice roaming is a common carrier service whose rates are subject to the standards of § 201(b), which requires just and reasonable rates, and § 202(a), which forbids discriminatory pricing. The complaint also contended that data roaming is a common carrier service subject to Title II's just and reasonable and nondiscrimination obligations, but that in any case the data rate was not "commercially reasonable" under the standards the Commission had adopted in its *Data Roaming Order*.

NTCH's complaint also alleged that the rates offered by Verizon were unreasonably discriminatory vis à vis rates offered to other carriers and Mobile Virtual Network Operators ("MVNOs") for similar or identical services. It alleged that Verizon's data roaming practices restrained trade because they

permitted MVNOs, particularly one called Straight Talk, to offer predatorily low rates to customers in competition with smaller carriers targeting the prepaid market, thus undercutting the smaller carriers' ability to survive. NTCH asked the Commission to force Verizon to make its roaming rates to all carriers public on the grounds that nondisclosure agreements prevented anyone (including the Commission) from discovering whether the rates Verizon offered to different carriers were discriminatory.

NTCH's complaint did not mention § 208(b)(1), which provides that the "Commission shall" issue an order concluding an investigation into the lawfulness of a charge or practice of a common carrier "within 5 months" after the filing of a complaint. On July 2, 2014, NTCH filed an amended complaint, again without including any assertion that the complaint proceeding was governed by § 208(b)(1) or its five-month deadline. On September 18, 2015, NTCH for the first time (and without any analysis or explanation) cursorily asserted in a brief filed in support of its complaint that the complaint must be resolved within five months under § 208(b)(1). On June 30, 2016, the Bureau issued its order denying NTCH's complaint. It found that Verizon's proffered voice roaming rate was not unjust or unreasonable, or unreasonably discriminatory, under the Commission's rules; that Verizon's proffered data roaming rates were commercially reasonable and not in violation of the Commission's data roaming rules; and that NTCH's proposed factors for consideration in evaluating Verizon's proffered rates (cost of service, comparison to retail rates, and comparisons to carriage with MVNOs) should be rejected as inappropriate and not comparable. NTCH then filed a petition for review with this court without seeking review by the Commission.

NTCH now asks this court to declare the roaming rates offered by Verizon unjust and unreasonable and unreasonably discriminatory, and to reverse and remand the disputed order issued by the Bureau. NTCH also asks the court to instruct the Commission to reassess roaming costs and reasonable rates of return, permit appropriate discovery into those costs, and direct Verizon to charge NTCH no more that it charges any other carrier for roaming services. Finally, NTCH challenges the Commission's decision in the *Open Internet Order*, 30 FCC Rcd. at 5857–58 ¶ 526, to forbear from applying §§ 201(b) and 202(a) to data roaming.

For the reasons indicated below we dismiss the petition for review for lack of jurisdiction.

## II. ANALYSIS

### A. *Standard of Review*

"We defer to the Commission's interpretation of the . . . Act so long as the Congress has not unambiguously forbidden it and it is otherwise permissible." *Cal. Metro Mobile Commc'ns, Inc. v. FCC*, 365 F.3d 38, 43 (D.C. Cir. 2004). However, questions concerning the jurisdiction of the court are reviewed *de novo*. *Gentiva Healthcare Corp. v. Sebelius*, 723 F.3d 292, 297 (D.C. Cir. 2013).

### B. *NTCH's Challenge to the Order Issued by the Bureau*

As noted above, the disputed order in this case was issued by the Bureau. The Bureau was acting pursuant to delegated authority, 47 U.S.C. § 155(c)(l), (3); 47 C.F.R. § 0.111(a)(11), and applying rules and guidelines set out by the Commission in three previous orders, *see In the Matter of NTCH, Inc., Complainant*, 31 FCC Rcd. 7165 (discussing Commission

actions that had addressed wireless carriers' obligation to provide roaming to carriers requesting roaming agreements). And the Bureau's disposition of NTCH's complaint was a staff-level order that was subject to review by the Commission. *See* 47 U.S.C. § 155(c)(4). At no time during the proceeding before the Bureau did NTCH ever seek review by the Commission; nor did NTCH's complaint before the Bureau assert that its claims were subject to 47 U.S.C. § 208(b)(l)'s five-month deadline. NTCH's first invocation of that limit appeared in its initial brief to the Bureau when no resolution of its administrative complaint had occurred for almost two years. After the Bureau issued the order denying NTCH's complaint, NTCH proceeded directly to seek review by this court.

Given these circumstances, we are constrained to dismiss NTCH's petition for review for want of jurisdiction. The Act expressly provides that, after a bureau has acted pursuant to delegated authority,

> (4) Any person aggrieved by any such order, decision, report or action may file an application for review by the Commission . . .

> (7) The filing of an application for review under this subsection shall be a condition precedent to judicial review of any order, decision, report, or action made or taken pursuant to a delegation under paragraph (1) of this subsection.

47 U.S.C. § 155(c)(4), (7). In light of these statutory provisions, it is well established that "a petition for review filed after a bureau decision but before resolution by the full Commission is subject to dismissal as incurably premature." *Int'l Telecard Ass'n*, 166 F.3d at 388; *see also Verizon Tel. Cos. v. FCC*, 453

F.3d 487, 500 (D.C. Cir. 2006); *Richman Bros. Records v. FCC*, 124 F.3d 1302, 1303 (D.C. Cir. 1997).

## C. *NTCH's Claim that the Bureau's Order Is Subject to Judicial Review Under 47 U.S.C § 208(b)*

NTCH argues that its petition for review should not be dismissed under 47 U.S.C. § 155(c)(7) because the Bureau's action was a "final order" that is subject to review under 47 U.S.C. § 208(b)(3). We disagree.

Section 208(b) states:

(1) Except as provided in paragraph (2), the Commission shall, with respect to any investigation under this section of the lawfulness of a charge, classification, regulation, or practice, issue an order concluding such investigation within 5 months after the date on which the complaint was filed.

(2) The Commission shall, with respect to any such investigation initiated prior to November 3, 1988, issue an order concluding the investigation not later than 12 months after November 3, 1988.

(3) Any order concluding an investigation under paragraph (1) or (2) shall be a final order and may be appealed under section 402(a) of this title.

47 U.S.C. § 208 (b)(1), (2), (3) (2012). As is clear from the terms of the statute, § 208(b)(3) refers to orders issued under § 208(b)(1) or (2), which refer to orders issued by "the Commission." When Congress says "the Commission," it means the Commission. When Congress means to refer to delegated subdivisions of the Commission, it does so explicitly.

For example, the Act's exhaustion requirement, 47 U.S.C. § 405(a) (2012), provides that "[t]he filing of a petition for reconsideration shall not be a condition precedent to judicial review of any such order, decision, report, or action, except where the party seeking such review . . . (2) relies on questions of fact or law upon which *the Commission, or designated authority within the Commission*, has been afforded no opportunity to pass," *id.* (emphasis added).

Section 208(b)(3) does not refer to any "delegated subdivisions" of the Commission. Therefore, the "final order" to which § 208(b)(3) refers is an order of the Commission. Furthermore, § 208(b)(3) refers to orders issued under § 208(b)(1) and (2), which refer to orders issued by "the Commission." 47 U.S.C. § 208(b). Section 208(b)(3) also says that "[a]ny order concluding an investigation under paragraph (1) or (2) shall be a final order and may be appealed under [47 U.S.C.] section 402(a)." *Id.* And "[u]nder 28 U.S.C. § 2342(1) (1994), this court has jurisdiction to determine the validity of all final orders of the . . . Commission made reviewable by section 402(a)." *Verizon Tel. Cos. v. FCC*, 269 F.3d 1098, 1103 (D.C. Cir. 2001) (internal quotation marks omitted); *see also Verizon Tel. Cos.*, 453 F.3d at 494. The Bureau's order was not a Commission order and, therefore, it was not an order subject to judicial review.

In its reply brief, NTCH contends that because its complaint ostensibly fell under § 208(b) rather than § 208(a), the Commission's delegation of the complaint to the Bureau was improper. However, this "improper delegation" argument also fails for lack of jurisdiction. As noted above, "47 U.S.C. § 155(c)(7) . . . makes the filing of an application for review by the Commission 'a condition precedent to judicial review' of a decision taken pursuant to delegated authority." *Richman Bros.*

*Records*, 124 F.3d at 1303. As we explained in *Environmentel, LLC v. FCC*:

> [A]pplications for review are designed to ensure that if a delegated authority, such as the Wireless Bureau, renders a decision, the Commission itself has the opportunity to review the decision before this Court considers it. The FCC Rules provide that "[a]ny person aggrieved by any action taken pursuant to delegated authority may file an application requesting review of that action by the Commission." "The filing of an application for review shall be a condition precedent to judicial review of any action taken pursuant to delegated authority." FCC Rules § 1.115(a), (k) (47 C.F.R. § 1.115(a), (k)). This rule prevents a party from appealing directly to this Court from a decision made by a delegated authority.
>
> Under these two provisions, the full FCC must have the opportunity to review all cases and all aspects of those cases before parties may exercise their statutory right to appeal to this Court under 47 U.S.C. § 402(b) (providing that "[a]ppeals may be taken from decisions and orders of the Commission to the United States Court of Appeals for the District of Columbia" in ten categories of cases).

661 F.3d 80, 83–84 (D.C. Cir. 2011); *see also Verizon Tel. Cos.*, 453 F.3d at 500; *Int'l Telecard Ass'n*, 166 F.3d at 388. It does not matter whether some of NTCH's complaint was meant to contest matters that arguably should not have been delegated. If NTCH meant to oppose the Bureau's order on any terms, it was required to seek Commission review before petitioning for review in this court. *See Environmentel*, 661

F.3d at 84. Indeed, if the Commission erred by delegating to the Bureau a dispute Congress intended the full Commission to resolve, requiring Commission review before appeal is the only way to honor Congress' command – otherwise a Bureau decision could be appealed and affirmed by this court without the Commission ever having spoken on the matter. NTCH has not claimed that review before the Commission was unavailable. NTCH's failure to seek Commission review leaves this court without jurisdiction to consider this case on the merits.

Finally, NTCH complains that the Bureau's disputed order in this case was delayed far beyond § 208(b)(1)'s five-month deadline. But NTCH never raised this concern with the Commission, nor did it file a claim with this court under 5 U.S.C. § 706(1) to "compel agency action unlawfully withheld or unreasonably delayed." Therefore, even if NTCH's complaint is arguably within the compass of § 208(b) and its attendant time constraint, NTCH did not properly raise and preserve any issue regarding an unreasonable delay in the issuance of the Bureau's order.

### III. CONCLUSION

For the reasons set forth above, we dismiss the petition for review for lack of jurisdiction.

*So ordered.*