PUBLIC COPY – SEALED INFORMATION DELETED

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 27, 2019      Decided December 10, 2019

No. 18-1271

FLAT WIRELESS, LLC,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

CELLCO PARTNERSHIP, DOING BUSINESS AS VERIZON
WIRELESS,
INTERVENOR

———

Consolidated with 18-1273

———

On Petitions for Review of an Order of
the Federal Communications Commission

PUBLIC COPY – SEALED INFORMATION DELETED

*Donald J. Evans* argued the cause for petitioners. With him on the briefs was *Keenan P. Adamchak.*

*Ashley S. Boizelle,* Deputy General Counsel, Federal Communications Commission, argued the cause for respondents. On the brief were *Robert B. Nicholson* and *Robert J. Wiggers,* Attorneys, U.S. Department of Justice, *Thomas M. Johnson Jr.,* General Counsel, *David M. Gossett,* Deputy General Counsel, *Richard K. Welch,* Assistant General Counsel, and *C. Grey Pash Jr.,* Counsel. *Jacob M. Lewis,* Associate General Counsel, Federal Communications Commission, and Matthew *J. Dunne,* Counsel, entered appearances.

*David L. Haga* argued the cause for intervenor-appellee. With him on the brief was *Christopher M. Miller.*

Before: TATEL and GRIFFITH, *Circuit Judges,* and SILBERMAN, *Senior Circuit Judge.*

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge:*[1] Wireless service providers Flat Wireless and NTCH, Inc. (apparently its full name) challenge the FCC's order approving rates that Verizon offered to Flat for both voice and data roaming. They insist that Flat should not pay Verizon much above Verizon's costs of

---

[1] **NOTE:** Portions of this opinion contain **sealed** information, which has been redacted.

PUBLIC COPY – SEALED INFORMATION DELETED

providing those services. Flat's challenge—NTCH's petition is not properly before us[2]—largely runs counter to Commission rules that deliberately eschew cost-based regulation of roaming rates. Flat nonetheless asserts that its challenge is not to the rules themselves but to how the FCC applied the rules to Verizon's proffered rates. Either way, we reject Flat's petition.

## I.

We have explained previously that a roaming rate is the charge that wireless provider A pays when its own subscriber travels beyond the range of that provider's network and must use the network of wireless provider B for voice or data services. *See NTCH, Inc. v. FCC*, 877 F.3d 408, 410 (D.C. Cir. 2017). Voice roaming permits subscribers to make calls when outside their provider's geographic coverage area; data roaming does the same for internet access. *Id.*

The Commission issued rules (paradoxically, the FCC traditionally calls them orders) in 2007 and 2010 to govern voice

---

[2]NTCH was not a party to Flat's complaint against Verizon, so it is not a "party aggrieved" by the Commission's order denying that complaint, which is the subject of these petitions. 28 U.S.C. § 2344; *see id.* § 2342(1); 47 U.S.C. § 402(a); *Simmons v. ICC*, 716 F.2d 40, 42 (D.C. Cir. 1983). NTCH did file a separate complaint and a request for discovery of Verizon's costs, both of which were denied by the Commission's Enforcement Bureau. The full Commission denied NTCH's appeal of the discovery issues in the course of adjudicating Flat's complaint, but that decision did not make NTCH a "party" to the Flat case. Nor did the Commission address NTCH's own complaint: NTCH never appealed the denial of its complaint by the Bureau to the full Commission.

PUBLIC COPY – SEALED INFORMATION DELETED

roaming,[3] and then followed with a similar rule covering data roaming in 2011.[4] The Voice Roaming Rules leave it to wireless providers to negotiate voice roaming rates, so long as they offer the service on a "just, reasonable, and non-discriminatory basis." 22 FCC Rcd. at 15817 ¶ 1; *see* 47 U.S.C. §§ 201–202. The Commission also provided a non-exhaustive list of factors it might consider if it were obliged to resolve disputes over voice roaming. *See* 25 FCC Rcd. at 4200–01 ¶¶ 39–40. The Data Roaming Rule similarly permits individual negotiations, requiring that providers offer data roaming service on "commercially reasonable terms and conditions." 26 FCC Rcd. at 5411 ¶ 1.

\* \* \*

Flat filed a complaint against Verizon with the Commission in 2015 alleging that Verizon's proffered roaming rates (for both voice and data) violated the Commission's rules. Essentially, Flat argued that Verizon's rates are unreasonable because its costs of providing roaming allegedly are far lower than the rates it charges. The Commission refused to consider Verizon's costs in accordance with its regulations and denied Flat's complaint. *See In the Matter of Flat Wireless, LLC v. Cellco P'Ship d/b/a/ Verizon Wireless*, 33 FCC Rcd. 7972 (2018). The FCC

---

[3] *In the Matter of Reexamination of Roaming Obligations of Commercial Mobile Radio Service Providers*, 22 FCC Rcd. 15817 (2007); *In the Matter of Reexamination of Roaming Obligations of Commercial Mobile Radio Service Providers and Other Providers of Mobile Data Services*, 25 FCC Rcd. 4181 (2010).

[4] *In the Matter of Reexamination of Roaming Obligations of Commercial Mobile Radio Service Providers and Other Providers of Mobile Data Services*, 26 FCC Rcd. 5411 (2011).

5

reiterated that its rules eschewed direct rate regulation in favor of individual negotiations to determine market-driven rates. *Id.* at 7980. The Commission, in any event, observed that the rates Verizon offered to Flat were within the range of rates that Verizon charges others; ███████████████████ ███████. *Id.* at 7977, 7979. Indeed, the Commission noted that those rates were ███████████ rates that Verizon itself pays when its own customers roam on other networks. *Id.* at 7976–77. The Commission also repeated its explanation accompanying the Voice and Data Roaming Rules that relatively high roaming rates will encourage carriers to build out their own networks instead of "piggy-backing" on others. *Id.* at 7978 n.63.

Flat now petitions this court for review.

## II.

### A.

Flat's primary contention is that the Commission should have required Verizon to offer roaming rates closer to its costs—an approach Flat says is consistent with the Voice and Data Roaming Rules. The Commission, of course, repeats its rationale for rejecting direct rate regulation and insists that Flat's appeal to costs amounts to a collateral attack on the Voice and Data Roaming Rules. At oral argument, however, Flat's counsel disclaimed any challenge to the rules themselves, claiming that Flat objected merely to how they were applied given current market conditions (i.e., that the roaming market allegedly is non-competitive).

It is obvious to us that the Voice and Data Roaming Rules rejected cost-based regulation and that Flat's challenge, notwithstanding its denial, is largely a collateral attack on those

PUBLIC COPY – SEALED INFORMATION DELETED

rules. In the 2007 Voice Roaming Rule, the Commission expressly "decline[d] to impose a price cap *or any other form of rate regulation*" on voice roaming rates. 22 FCC Rcd. at 15832 ¶ 37 (emphasis added); *see id.* at 15824 ¶ 18 ("We decline to regulate the automatic roaming rates . . . ."). Instead, the Commission opted to allow rates "to be freely determined through negotiations between the carriers based on competitive market forces." *Id.* at 15824 ¶ 18. The 2010 Voice Roaming Rule sets out a number of factors the Commission may consider when resolving disputes over voice roaming rates. 25 FCC Rcd. at 4200–01 ¶ 39. Though that list is not "exclusive or exhaustive," any reference to a carrier's costs of providing roaming is conspicuously absent. *Id.* at 4201 ¶ 40; *see also* 26 FCC Rcd. at 5452–53 ¶¶ 86–87 (same for Data Roaming Rule).

The 2010 Voice Roaming Rule explicitly notes that the price of voice roaming might be "relatively high" compared to what it would cost a wireless service provider to build out its own network facilities. 25 FCC Rcd. at 4197 ¶ 32. That "relatively high" price, the Commission reasoned, is a feature, not a bug: high roaming rates may help deter service providers from "piggy-backing" on other networks where they could otherwise improve their own network facilities. *See id*; *see also* 22 FCC Rcd. at 15833 ¶ 40. Flat insists that there is no risk of piggy-backing in its case, but the point is that the Voice and Data Roaming Rules contemplate "relatively high" roaming rates approvingly. That posture is at odds with the cost-plus-reasonable-rate-of-return approach Flat advocates. The 2011 Data Roaming Rule makes the same point about piggy-backing, and in it the Commission rejected "a more specific prescriptive

7

regulation of rates requested by some commenters." 26 FCC Rcd. at 5423 ¶ 21.[5]

In Flat's view, the Commission should nevertheless consider costs when evaluating roaming rates because the roaming market is less competitive than it once was. The problem for Flat is that the Hobbs Act limits direct challenges to FCC rules to within sixty days after their issuance. *See* 28 U.S.C. §§ 2344, 2342(1); 47 U.S.C. § 402(a). And we have explained that a challenge to a rule otherwise governed by a statutory limitations period ordinarily cannot be raised out-of-time in an adjudication, *see Tribune Co. v. FCC*, 133 F.3d 61, 68–69 (D.C. Cir. 1998), unless the rule is claimed to conflict with governing statutes or the Constitution. *See Weaver v. Fed. Motor Carrier Safety Admin.*, 744 F.3d 142, 145 (D.C. Cir. 2014) (collecting cases). That means challenges to procedural irregularities, underlying facts, or agency responses to comments in rulemaking must be presented in a timely direct challenge to such a rule. *See NLRB Union v. Fed. Labor Relations Auth.*, 834 F.2d 191, 195–97 (D.C. Cir. 1987) (distinguishing between attacks on a rule's "substantive validity" and its "procedural lineage," *id.* at 195); *cf. U.S. v. Nova Scotia Food Prods. Corp.*, 568 F.2d 240, 250–53 (2d Cir. 1977) (reviewing procedural challenges to a rule *not* subject to a statutory limitations period in an enforcement proceeding). If a party later believes that such a rule's underlying factual assumptions are incorrect either because they were originally incorrect or because the facts have changed, the appropriate avenue for relief is a petition for rulemaking. *See Tribune Co.*,

---

[5]The "commercially reasonable" standard adopted in the 2011 Data Roaming Rule ensures providers even *more* freedom than does the "just and reasonable" standard that governs voice roaming. *Cellco P'ship v. FCC*, 700 F.3d 534, 548 (D.C. Cir. 2012).

**PUBLIC COPY – SEALED INFORMATION DELETED**

133 F.3d at 68–69. Accordingly, the Commission lawfully declined to reconsider the wisdom of the Voice and Data Roaming Rules in the context of Flat's complaint proceeding.

Putting aside Verizon's costs, the Commission's determination that Verizon's proffered voice roaming rate is not unreasonable, still less discriminatory, is well supported. Verizon offered Flat a rate of ▮▮▮▮▮▮▮▮▮▮ for voice roaming. As the Commission observed, Verizon has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. That rate also amounts to a ▮▮▮▮▮▮▮ from Flat's current voice roaming rate with Verizon of ▮▮▮▮▮. And Verizon itself pays ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Verizon's offer thus fell well within the range of rates it has negotiated with numerous other providers.

Flat counters that Verizon's proffered voice roaming rate is unreasonably discriminatory in that Verizon failed to justify charging Flat anything above the very *lowest* rate that Verizon offers to others. But the Voice Roaming Rules contemplate variations in negotiated rates, *see, e.g.*, 22 FCC Rcd. at 15834 ¶ 44, and our decisions permit that outcome. Providers are not required to file tariffs listing their rates for wireless voice services, and as a result, we have reasoned that providers do not unreasonably discriminate simply because they charge customers different prices. *See Orloff v. FCC*, 352 F.3d 415, 418–20 (D.C. Cir. 2003). Here, the Commission legitimately relied on the Voice Roaming Rules' recognition of the benefits of the free market to explain Verizon's differential pricing. *See* 33 FCC Rcd. at 7977. It also noted that Flat has relatively little to offer Verizon in terms of reciprocal roaming, which further

**PUBLIC COPY – SEALED INFORMATION DELETED**

explains why Verizon might not offer Flat its lowest roaming rates. *Id.* That justification was adequate.

The Commission's determination that Verizon's data roaming rates are commercially reasonable is also well supported. Verizon offered Flat a rate of ▇

. Those ▇ rates are less than ▇[7]

To all of this, Flat responds that Verizon's rates are unreasonable because they exceed what Verizon allegedly charges for voice and data services to customers in one of Verizon's retail plans and to certain wireless service resellers with whom Verizon contracts. But, as the Commission pointed out, Flat's calculation of the "rates" offered in the retail plan was faulty, and the resale rate upon which Flat relied ▇

. 33 FCC Rcd. at 7980. We agree with the Commission that Flat's "cherry-picked" comparisons do not

---

[6]As the Commission put it, "1xRTT and EVDO are wireless network technologies, and EVDO enables data transmission over wireless networks at a faster rate than 1xRTT." 33 FCC Rcd. at 7975 n.29.

[7]By implication, this evidence also contradicts Flat's contention that Verizon's proffered rates were tantamount to a refusal to offer a data roaming arrangement. *See* 26 FCC Rcd. at 5453 ¶ 86.

10

undercut the reasonableness of Verizon's proffered roaming rates. 33 FCC Rcd. at 7980; *see id.* at 7980–81.

## B.

Flat does make an additional argument that challenges the Commission's *application* of the Voice and Data Roaming Rules rather than the rules themselves. It asserts that comparisons to Verizon's agreements with other carriers are useless because Verizon exercises market power. It is claimed that only Sprint represents a possible roaming alternative for companies like Flat that use CDMA technology, and Sprint's network is not anywhere near as extensive as Verizon's. Since Verizon's network is huge and indispensable for CDMA roaming, so the argument goes, the fact that Verizon's proffered roaming rates are comparable to what it charges to other carriers is not significant. Put differently, Verizon's alleged monopoly power hurts *all* carriers.

If Flat is right, that state of affairs would undercut the Commission's reliance on Verizon's other roaming agreements, and it would support Flat's claim under the Data Roaming Rule because, obviously, conduct that unreasonably restrains trade is not "commercially reasonable." 26 FCC Rcd. at 5452 ¶ 85. But we agree with the Commission that Flat has failed to support its claim. Flat relied primarily on Verizon's and Sprint's coverage maps and a declaration by Flat's CEO, Kevin Beierschmitt. Beierschmitt testified that given Verizon's large national footprint, "in many parts of the country there is no realistic alternative to [Verizon] as a roaming partner for Flat's customers. There is either [Verizon] or nothing." Beierschmitt discounted the viability of Sprint as an alternative to Verizon in the Texas roaming market because of alleged gaps in Sprint's coverage and dropped calls on its network. General statements

PUBLIC COPY – SEALED INFORMATION DELETED

comparing the strength of Verizon's coverage to that of Sprint, however, do not demonstrate that Verizon has market power or that it has exercised it in a way to eliminate competition. Importantly, as the Commission concluded, Flat did not identify any specific market in which Verizon is its only available roaming partner. Even Beierschmitt's discussion of Sprint's spottiness in Texas does not address the potential for Flat to roam on other smaller carriers' networks. So without more, Flat's theory of uniform monopoly pricing on Verizon's part remains only an assertion without adequate supporting evidence.[8]

In any event, we note that competition in voice and data roaming markets may be on the rise with the steady spread of LTE technology. In the past, wireless service providers have routinely employed either CDMA technology (used by Verizon and Sprint) or GSM technology (used by AT&T and T-Mobile). Mobile devices are usually compatible with only one of the two, and that state of affairs has often restricted roaming (and competition for roaming) to carriers using like technologies. But LTE traffic, Verizon explains, generally can be carried across LTE networks regardless of whether a network otherwise uses CDMA or GSM technologies. Competition in voice and data roaming markets thus will increase over time as the old division between CDMA and GSM technologies becomes obsolete.

---

[8]Flat's reliance on a declaration by *Verizon's* economics expert is not helpful to its case. The expert described circumstances where monopoly power or the presence of a "must-have input" could render comparisons to other roaming rates untrustworthy, but concluded that those concerns were inapplicable here. And contrary to Flat's mischaracterization, the expert said nothing about Verizon's approach to pricing.

12

PUBLIC COPY – SEALED INFORMATION DELETED

## C.

We lack jurisdiction to consider Flat's remaining challenge. Unhappy with the "commercially reasonable" standard for data roaming rates, Flat asks us to declare unlawful a portion of the Commission's 2015 Open Internet Rule[9] that left that standard in place. In that rule, the Commission classified broadband internet access service—including mobile data service—as a Title II service subject to common carriage regulation, which is more stringent. *See* 30 FCC Rcd. at 5743–44 ¶ 331. But the Commission forbore from applying the Title II requirements to data roaming, leaving the less demanding "commercially reasonable" standard in place. *Id.* at 5857–58 ¶ 524–526. It is the latter standard that the FCC applied to the data roaming rates in this case.[10]

Unfortunately for Flat, it separately asked the Commission to reconsider the forbearance portion of the 2015 Open Internet Rule, and that request was still pending when Flat petitioned this court for review of the present order denying Flat's complaint against Verizon. Our jurisdiction in this case extends only to "final orders" of the Commission, 28 U.S.C. § 2342(1), and a pending request for administrative reconsideration renders an agency action nonfinal and unreviewable with respect to the

---

[9] *In the Matter of Protecting and Promoting the Open Internet*, 30 FCC Rcd. 5601 (2015).

[10] Verizon offered the rates in question to Flat before the Commission reclassified retail broadband internet access service as a Title I information service in 2018. *See In the Matter of Restoring Internet Freedom*, 33 FCC Rcd. 311 (2018), *vacated in part on other grounds*, *Mozilla Corp. v. FCC*, 940 F.3d 1 (D.C. Cir. 2019) (per curiam).

PUBLIC COPY – SEALED INFORMATION DELETED

party who made the request. *TeleSTAR, Inc. v. FCC*, 888 F.2d 132, 133 (D.C. Cir. 1989) (per curiam). So Flat's petition on the forbearance question appears to have been incurably premature.

Flat argues, however, that the 2015 Open Internet Rule and the denial of Flat's complaint against Verizon are separate decisions, and that nothing keeps it from pursuing a facial challenge to the forbearance decision while simultaneously pursuing adjudicatory relief. To be sure, our cases applying the "incurably premature" doctrine often involve a petitioner who has sought agency reconsideration and judicial review of the same underlying order. *See, e.g.*, *City of New Orleans v. SEC*, 137 F.3d 638, 639 (D.C. Cir. 1998) (per curiam); *Bellsouth Corp. v. FCC*, 17 F.3d 1487, 1488–89 (D.C. Cir. 1994); *TeleSTAR, Inc.*, 888 F.2d at 133; *United Transp. Union v. ICC*, 871 F.2d 1114, 1116 (D.C. Cir. 1989). But not always. The petitioners in *Petroleum Communications, Inc. v. FCC*, 22 F.3d 1164 (D.C. Cir. 1994), challenged a rule recently issued by the Commission as unlawfully discriminatory—an argument one of the petitioners had advanced in a separate adjudication still pending before the agency. *Id.* at 1169, 1171 n.7. We noted that it would "seem imprudent, to say the least, to pass on the discriminatory application issue in this related case when the allegedly discriminatory decision is nonfinal and may be altered by the FCC at [the petitioner's] behest." *Id.* at 1171 n.7; *see also AirTouch Paging v. FCC*, 234 F.3d 815, 818 (2d Cir. 2000) (concluding a petition was incurably premature where the petitioner had requested agency reconsideration of an identical issue in a separate, still-pending proceeding). Flat's forbearance arguments in this proceeding are concededly a challenge to a portion of the 2015 Open Internet Rule. We conclude the petition on that issue was incurably premature because the 2015

14

PUBLIC COPY – SEALED INFORMATION DELETED

Open Internet Rule was nonfinal as to Flat and was still subject to the Commission's revision.[11]

\* \* \*

For the foregoing reasons, NTCH's petition for review is dismissed and Flat's petition for review is denied.

*So ordered.*

---

[11]Flat also cites our conclusion in *AT&T Co. v. FCC*, 978 F.2d 727 (D.C. Cir. 1992), that the Commission cannot rely on the prospect of future rulemaking to put off determining the merits of a legal claim brought in an adjudication. *See id.* at 731–32. But that proposition doesn't bear on the jurisdictional question here: whether an agency order is "final" with respect to an issue that the petitioner has asked the agency to reconsider elsewhere.