# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 17, 2022      Decided August 11, 2023

No. 22-1028

NATIONAL ASSOCIATION OF IMMIGRATION JUDGES,
INTERNATIONAL FEDERATION OF PROFESSIONAL AND
TECHNICAL ENGINEERS JUDICIAL COUNCIL 2,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

———

On Petition for Review of Decisions
of the Federal Labor Relations Authority

———

*Abiel Garcia* argued the cause for petitioner. With him on the briefs was *Majed Dakak*.

*Rebecca J. Osborne*, Deputy Solicitor, Federal Labor Relations Authority, argued the cause and filed the brief for respondent.

Before: SRINIVASAN, *Chief Judge*, WILKINS, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

Concurring opinion filed by *Senior Circuit Judge* RANDOLPH.

PER CURIAM: For over four decades, immigration judges employed by the Executive Office for Immigration Review have collectively bargained through a certified union. Four years ago, that office asked the Federal Labor Relations Authority to determine that immigration judges are management officials barred from inclusion in a bargaining unit. The Authority agreed. Following an unsuccessful reconsideration motion, and with a second reconsideration motion still pending before the Authority, the union petitioned this court for review of both the Authority's initial decision and its decision denying reconsideration. The union contends that, in issuing those decisions, the Authority violated the union's substantive and procedural due process rights.

We do not reach the merits of those arguments. Because the union filed its petition for review in our court at a time when its second reconsideration motion remained pending before the Authority, the union's petition was incurably premature. We therefore dismiss the petition for lack of jurisdiction.

I.

A.

The Federal Service Labor-Management Relations Statute (FSLMRS) governs collective bargaining between certain federal agencies and labor organizations representing agency employees. 5 U.S.C. §§ 7101–7135; *see Nat'l Treasury Emps. Union v. FLRA*, 943 F.3d 486, 489 (D.C. Cir. 2019). Under the FSLMRS, the Federal Labor Relations Authority determines whether a group of employees may bargain together as a unit. 5 U.S.C. § 7112(a). The FSLMRS generally prohibits the

Authority from authorizing a unit that includes "any management official," *id.* § 7112(b)(1), defined as any employee whose position "require[s] or authorize[s] the individual to formulate, determine, or influence the policies of the agency," *id.* § 7103(a)(11).

An agency or labor organization may file a representation petition with the Authority seeking clarification on whether a previously certified unit remains appropriate. 5 C.F.R. §§ 2422.1(b)(1), 2422.2(c). The petitioning party must "demonstrate that substantial changes have altered the scope or character of the unit since the last certification" so as to warrant reexamining the unit's appropriateness. *U.S. Dep't of the Air Force, Air Force Materiel Command, Wright-Patterson Air Force Base*, *Ohio*, 70 F.L.R.A. 327, 328 (2017).

When a party files a petition with the Authority, a Regional Director investigates it and may issue a decision. 5 C.F.R. § 2422.30(a)–(c). If the Regional Director issues a decision, either party may file an application for review of that decision with the Authority. *Id.* § 2422.30(d). After the Authority resolves an application for review, a party may move for reconsideration within ten days. *Id.* § 2429.17. The Authority can grant reconsideration if "extraordinary circumstances" warrant it. *Id.*

A party aggrieved by "any final order of the Authority" may seek judicial review within sixty days either in our court or in the court of appeals for the circuit in which the party resides or transacts business. 5 U.S.C. § 7123(a). A party need not seek agency reconsideration before petitioning for judicial review, *see* 5 C.F.R. § 2429.17, but if it chooses to seek reconsideration, "the reconsideration request ordinarily tolls the running of the time limit for judicial review," *Collins v. Nat'l Transp. Safety Bd.*, 351 F.3d 1246, 1250 (D.C. Cir. 2003).

4

B.

Immigration judges are employees of the Department of Justice's Executive Office for Immigration Review (EOIR). For over four decades, immigration judges have been represented in collective bargaining by the National Association of Immigration Judges, International Federation of Professional and Technical Engineers Judicial Council 2 (the Union). The Authority certified the Union in 1979 and reaffirmed the unit's appropriateness in 2000. *See U.S. Dep't of Just., Exec. Off. of Immigr. Rev.*, 56 F.L.R.A. 616, 616, 623 (2000).

In August 2019, EOIR filed a representation petition asking the Authority to determine that immigration judges cannot participate in a bargaining unit because they are "management officials." EOIR contended that factual and legal developments since 2000 warranted reconsideration of the unit's appropriateness. A Regional Director denied EOIR's representation petition. *U.S. Dep't of Just., Exec. Off. for Immigr. Rev.*, 71 F.L.R.A. 1046, 1053–68 (2020) (Initial Order).

EOIR filed an application for review with the Authority. On November 2, 2020, the Authority issued the first order challenged here: an Initial Order granting EOIR's application, vacating the Regional Director's decision, and directing the Regional Director to exclude immigration judges from the bargaining unit. *Id.* at 1046–49. The Authority concluded that immigration judges influence EOIR policy and thus are "management officials." *Id.* at 1048–49.

Later that month, the Union filed its first reconsideration motion with the Authority. The Union later moved for a

remand and a stay, citing changes in the duties of immigration judges since the closing of the record in the Initial Order. EOIR stated that it did not oppose the Union's motion for a remand and a stay and moved to withdraw its 2019 representation petition on the ground that the petition was no longer supportable in light of the new Administration's policy views. The Union joined in EOIR's motion to withdraw the representation petition.

On January 21, 2022, the Authority issued the second order challenged here, denying the Union's first reconsideration motion and dismissing EOIR's motion to withdraw its representation petition. *U.S. Dep't of Just., Exec. Off. for Immigr. Rev.*, 72 F.L.R.A. 622 (2022) (First Reconsideration Order). The Authority determined that the Union's arguments for reconsidering the Initial Order were "insufficient to establish extraordinary circumstances." *Id.* at 624–25. And the Authority dismissed EOIR's motion to withdraw its representation petition as untimely, reasoning that the motion was, "in effect, a motion for reconsideration," which is permitted only within ten days of a decision. *Id.* at 623 n.15.

On February 7, 2022, the Union filed a second reconsideration motion with the Authority. The Union asked the Authority to reconsider its First Reconsideration Order and contended, among other things, that the Authority had violated the Union's due process rights.

On February 23, 2022, while its second reconsideration motion was pending before the Authority, the Union filed a petition in our court seeking review of both the Initial Order and the First Reconsideration Order based on alleged procedural and substantive due process violations. We consider that petition in this decision.

On April 12, 2022, the Authority denied the Union's second reconsideration motion. *U.S. Dep't of Just., Exec. Off. for Immigr. Rev.*, 72 F.L.R.A. 733 (2022) (Second Reconsideration Order). In that motion, the Union asserted that it sought reconsideration of the First Reconsideration Order. But the Authority believed the Union in fact raised some arguments concerning the Initial Order. *Id.* at 734. Because the Initial Order had issued over a year before the Union's second reconsideration motion, and a reconsideration motion must be filed within ten days of a decision, the Authority dismissed those challenges as untimely. *Id.* The Authority denied the remainder of the Union's second reconsideration motion on the ground that the Union had failed to establish extraordinary circumstances warranting reconsideration of the First Reconsideration Order. *Id.* at 734–36.

The Authority then moved in our court to dismiss the Union's petition for review for lack of jurisdiction. The Union filed an emergency motion for a stay of the Second Reconsideration Order pending resolution of the Union's petition for review. A panel of our court denied the Union's stay motion and referred the Authority's motion to dismiss for lack of jurisdiction to this panel. Per Curiam Order, *Nat'l Ass'n of Immigr. Judges v. FLRA*, No. 22-1028 (D.C. Cir. Apr. 26, 2022), ECF No. 1944413.

II.

The Authority asserts that we lack jurisdiction for two independent reasons: (i) the Union's second reconsideration motion, which was pending before the Authority when the Union filed the petition for review that we consider here, rendered the petition incurably premature; and (ii) the Initial Order and the First Reconsideration Order are orders

"involving an appropriate unit determination" and thus are not directly reviewable by this court, *see* 5 U.S.C. § 7123(a)(2). We agree with the Authority's first argument and thus have no need to consider the second.

The Union contends that the Authority failed to preserve its incurable prematurity objection. But regardless of the specific arguments made (or preserved) by a party, "we have an independent obligation to be sure of our jurisdiction." *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 174 (D.C. Cir. 2012) (quotation marks and citation omitted). We lack jurisdiction here.

The FSLMRS grants us jurisdiction "[u]pon the filing of a petition under [section 7123(a)] for judicial review." 5 U.S.C. § 7123(c). Section 7123(a), in turn, authorizes "[a]ny person aggrieved by any final order of the Authority" to file a petition challenging the order within sixty days. *Id.* § 7123(a). We thus have jurisdiction "[u]pon the filing of a petition" for review only if it challenges a "final order of the Authority." *Id.* § 7123(a), (c).

It is well-established that "a pending request for administrative reconsideration renders an agency action nonfinal and unreviewable with respect to the party who made the request." *Flat Wireless, LLC v. FCC*, 944 F.3d 927, 933 (D.C. Cir. 2019). A party who seeks agency reconsideration therefore may not petition this court for review until the agency resolves the reconsideration request. *See id.*; *Snohomish Cnty. v. Surface Transp. Bd.*, 954 F.3d 290, 298–99 (D.C. Cir. 2020). If a "petitioner who has sought agency reconsideration" also seeks "judicial review of the same underlying order" before the agency decides the reconsideration request, the petition for review is "incurably premature" in challenging nonfinal agency action. *Flat Wireless*, 944 F.3d at 933; *see, e.g.,*

*Snohomish Cnty.*, 954 F.3d at 298–99; *Am. Rivers v. FERC*, 895 F.3d 32, 43 (D.C. Cir. 2018). In that situation, the petition for review must be dismissed for lack of jurisdiction. *See Am. Rivers*, 895 F.3d at 43; *Flat Wireless*, 944 F.3d at 933.

Here, the Union's petition was incurably premature. The Union's second reconsideration motion remained pending before the Authority when the Union filed the petition for review, rendering the challenged orders nonfinal at the time of the Union's petition. By filing a motion for agency reconsideration of the First Reconsideration Order before filing its petition for review in our court, the Union chose agency reconsideration over immediate judicial review. The Union could have petitioned for review of the Initial Order, the First Reconsideration Order, and the Second Reconsideration Order *after* the Authority issued the Second Reconsideration Order. But because the Union filed its petition before the Second Reconsideration Order was issued, the petition must be dismissed.

It is of no moment that the Union's second reconsideration motion requested agency reconsideration of an order denying reconsideration (i.e., the First Reconsideration Order), as opposed to the underlying order (i.e., the Initial Order). When a party requests agency reconsideration of an order denying reconsideration, the party's request renders both that order and the underlying order nonfinal.

In *Tennessee Gas Pipeline Co. v. FERC*, 9 F.3d 980 (D.C. Cir. 1993) (per curiam), for instance, Tennessee Gas sought agency rehearing of an order that denied Tennessee Gas's request to impose a "reconciliation surcharge" on its customers. *Id.* at 980. The agency denied rehearing. *Id.* Tennessee Gas then sought rehearing of the order denying rehearing and, less than a month later, filed a petition in this

court seeking review of both the order denying rehearing and the underlying "reconciliation surcharge" order. *Id.* Applying the principle that "a party may not simultaneously seek both agency reconsideration and judicial review of an agency's order," we held that Tennessee Gas's petition for review was incurably premature, including with respect to the underlying "reconciliation surcharge" order. *Id.* at 980–81. That was so even though Tennessee Gas's second rehearing motion sought rehearing of only the order denying rehearing, not the underlying "reconciliation surcharge" order. *Id.*

The same reasoning applies here. The Union's petition for review was incurably premature—including with respect to the Initial Order—even though the Union's second reconsideration motion sought reconsideration of only the First Reconsideration Order, not the Initial Order. A contrary conclusion would disserve the central purpose of the incurable prematurity doctrine. "There is good reason to prohibit any litigant from pressing its cause concurrently upon both the judicial and the administrative fronts: a favorable decision from the agency might yet obviate the need for review by the court." *Clifton Power Corp. v. FERC*, 294 F.3d 108, 111–12 (D.C. Cir. 2002). And here, as in *Tennessee Gas*, a favorable agency decision on the second reconsideration motion pending before it could have obviated the need for judicial review of both the order initially denying reconsideration and the underlying order.

To be sure, the result might be different if the Union's second reconsideration motion had been untimely and the Authority had declined to consider the motion for that reason. We have held that "the filing of an *untimely* petition for agency reconsideration does not render incurably premature an otherwise valid petition for judicial review," at least if "the agency does not consider the merits of the tardy request."

*Gorman v. Nat'l Transp. Safety Bd.*, 558 F.3d 580, 587 (D.C. Cir. 2009) (emphasis added); *cf. Snohomish Cnty.*, 954 F.3d at 299.  But here, even if the Authority considered several of the Union's arguments in its second reconsideration motion to be "untimely" challenges to the Initial Order, no party disputes that the Union's motion timely sought reconsideration of the First Reconsideration Order.  Indeed, the Union itself embraces that notion, and the Authority denied the Union's motion in part because of a failure to show extraordinary circumstances warranting reconsideration of the First Reconsideration Order. Second Reconsideration Order, 72 F.L.R.A. at 734–36.

Nor does the Authority's ultimate denial of the Union's second reconsideration motion cure the prematurity of the Union's petition.  When a party petitions this court for review while its request for agency reconsideration remains pending, the petition is not just "premature," but "incurably" so. *Clifton Power Corp.*, 294 F.3d at 110.  That is, "subsequent action by the agency on a motion for reconsideration does not ripen the [earlier-filed] petition for review or secure appellate jurisdiction." *Snohomish Cnty.*, 954 F.3d at 298 (alteration in original) (quoting *TeleSTAR, Inc. v. FCC*, 888 F.2d 132, 134 (D.C. Cir. 1989) (per curiam)).  The Authority's issuance of the Second Reconsideration Order thus did not "ripen" the Union's premature petition.  Rather, "in order to cure the defect, the challenging party must file a new . . . petition for review from the now-final agency order." *Id.* (quotation marks and citation omitted).

Perhaps recognizing that the Second Reconsideration Order cannot cure prematurity, the Union offers to "immediately file a new petition" if the court "deems it necessary."  Union Br. 7 n.2; *see* Union Reply Br. 16–17.  The Union indeed could have filed a new petition within sixty days of the Authority's April 12, 2022 issuance of the Second

Reconsideration Order—i.e., by June 11, 2022, which was during the briefing in this case. *See Tenn. Gas Pipeline Corp.*, 9 F.3d at 981; *see also Clifton Power Corp.*, 294 F.3d at 110 ("The time for filing the petition for review is tolled until all proceedings before the agency have been completed."). But the Union did not file a new petition for review at that time. And regardless, the Union's filing of a new petition would give rise to a new proceeding—it would not cure a jurisdictional defect as to a pending petition.

\* \* \* \* \*

For the foregoing reasons, we dismiss the petition for review for lack of jurisdiction.

*So ordered.*

RANDOLPH, *Senior Circuit Judge*, concurring: I agree that the law of our circuit requires dismissal of the National Association of Immigration Judges' (NAIJ's) petition for review because it was "incurably premature," and because NAIJ failed to file a new petition for judicial review after the agency denied its request for reconsideration.

I write because the "incurably premature" doctrine, announced in *TeleSTAR, Inc. v. FCC*, 888 F.2d 132 (D.C. Cir. 1989) (per curiam), deserves reconsideration, either by our court *en banc* or through an amendment to Rule 15 of the Federal Rules of Appellate Procedure.

*TeleSTAR* announced a new rule for administrative law cases on direct review, a rule it made prospective only. After *TeleSTAR*, if a petition for judicial review of agency action is rendered non-final by the filing of a motion for agency reconsideration,[1] the petition will be deemed "incurably premature." That is, the petition will not ripen or become valid to confer appellate jurisdiction even after the agency disposes of the reconsideration motion. *See id.* at 134. If the party aggrieved by agency action fails to file another petition for review after the agency acts on the reconsideration motion, our court must dismiss the party's original petition for judicial review. *See, e.g.*, *Snohomish Cnty., Washington v. Surface Transp. Bd.*, 954 F.3d 290, 298 (D.C. Cir. 2020); *Flat Wireless, LLC v. FCC*, 944 F.3d 927, 933 (D.C. Cir. 2019); *Clifton Power Corp. v. FERC*, 294 F.3d 108, 111 (D.C. Cir. 2002).

The theory is that the agency's action will turn into a "final" action subject to judicial review only at the moment the agency decides the reconsideration motion and starts the clock running

---

[1] *See, e.g.*, *United Transportation Union v. ICC*, 871 F.2d 1114, 1118 (D.C. Cir. 1989).

for the filing a new petition for review.[2]

In the past, a similar regime controlled appeals from judgments of the district courts. Like petitions seeking judicial review of agency action, appeals from district court judgments – with a few exceptions – had to be from "final decisions." 28 U.S.C. § 1291. Rule 4(a) of the Federal Rules of Appellate Procedure had provided that if a litigant files a notice of appeal before a post-judgment motion was made or while a post-judgment motion was pending, the court of appeals lacked jurisdiction unless the litigant timely filed a new notice of appeal after the district court acted on the post-judgment motion. *See* Fed. R. App. P. 4(a) (1979); Fed. R. App. P. 4(a) advisory committee's note to 1993 amendment.

In a typically forceful opinion, Judge Richard Posner wrote that "this particular wrinkle in the appellate rules is a trap for the unwary into which many appellants . . . have fallen, with dire consequences since there is no way they can reinstate their appeal if the second notice of appeal is untimely. The mistake these litigants make is thoroughly understandable. . . . The idea that the first notice of appeal lapses rather than merely being suspended is not intuitive." *Averhart v. Arrendondo*, 773 F.2d 919, 920 (7th Cir. 1985); *see also Harcon Barge Co. v. D & G Boat Rentals, Inc.*, 746 F.2d 278, 281 (5th Cir. 1984) ("The harsh result of this mandated rigid application of this seemingly functionless provision of the rule is, in our view, that we must dismiss this appeal.").

In 1993, appellate Rule 4(a)(4) was amended to eliminate

---

[2] Another twist is that "the filing of an untimely petition for agency reconsideration does not render incurably premature an otherwise valid petition for judicial review." *Gorman v. Nat'l Transp. Safety Bd.*, 558 F.3d 580, 587 (D.C. Cir. 2009).

this "particular wrinkle." Since then, if "a party files a notice of appeal" before the district court disposes of a post-judgment motion, "the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered." Fed. R. App. P. 4(a)(4)(B)(I).

The case for reform of our "incurably premature" doctrine is even stronger than reasons for amending Rule 4(a)(4) in 1993. Both dealt with "final decisions" and both set a "trap for the unwary." But at least the pre-1993 requirement that a new notice of appeal had to be filed was set forth in the Federal Rules of Appellate Procedure, although the rule was "complicated" and "buried in Rule 4 of the appellate rules, which anyway are less familiar than the rules of [civil] procedure." *Averhart*, 773 F.2d at 920. In contrast, the "incurably premature" doctrine is nowhere to be found in the appellate rules, including where one would expect to find such a requirement – that is, in either Rule 15 itself, which is entitled "Petition for Review or Appeal of Agency Action; Docketing Statement," or in our Circuit Rule 15.

It is no answer to say that the incurably premature doctrine saves the court from the "pointless waste of judicial energy" required "to process any petition for review before the agency has acted on the request for reconsideration." *TeleSTAR*, 888 F.2d at 134. If this is a concern, there is a far simpler solution. A petition for review filed during the pendency of a motion for reconsideration could automatically be stayed, and then automatically become effective after – but only after – the agency rules on the pending reconsideration motion. That is the approach now embodied in Rule 4 of the Federal Rules of Appellate Procedure. As the First Circuit has acknowledged, "holding [a] petition in abeyance serve[s] equally the interests of judicial economy" as does dismissing premature petitions

outright.  *Craker v. DEA*, 714 F.3d 17, 25–26 (1st Cir. 2013).